UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FLORENCE DIVISION

| | |
|---|---|
| MICHAEL QUALLS | ) Civil Action No.: 4:22-cv-02186-RBH-KDW |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| TOWN OF McBEE, BARBARA LISENBY, AND TERRI KING | ) |
| Defendants. | ) |

Pending before the Court are Defendants' Motions for Summary Judgment. ECF No.'s 42 & 47. Plaintiff filed responses to these motions, ECF No.'s 53 & 54, Defendants Lisenby and King replied, ECF No. 61. This matter is before the Court with the Report and Recommendation ("R&R") of United States Magistrate Judge Kaymani D. West, who recommends that the court grant Defendants' Motions for Summary Judgment and dismiss Plaintiff's causes of action for claims under 42 U.S.C. §§ 1983 and 1985.[1] ECF No. 77. Plaintiff filed objections to the Magistrate Judge's R&R, ECF No. 78, and Defendants did not reply. The Court has reviewed all filings and adopts the Magistrate Judge's recommendation, as modified by the analysis herein, to dismiss the entirety of Plaintiff's action. Therefore, Defendants' Motions for Summary Judgment are granted.

**Background**

The R&R adequately sets forth the factual background of this case. However, to briefly summarize, Plaintiff was pulled over for violating traffic laws and was found to be driving with

---

[1] This Magistrate Judge issued the R & R in accordance with U.S.C. § 636(b) and Local Civil Rule 73.02(B)(g) (D.S.C.).

1

a suspended license. ECF No. 77 at 2. Plaintiff was issued a ticket and appeared before Magistrate Judge Lisenby twice, and he was taken into custody on the second appearance on August 8, 2019. ECF No. 47-11 at 2. Plaintiff filed a state court action on October 6, 2020, and "brought claims pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. 15-78-10, *et seq*. against the Town of McBee for gross negligence; the breach of his rights afforded under the South Carolina Constitution, including due process and the right to be free from cruel and unusual punishment; false imprisonment; and malicious prosecution." ECF No. 77 at 5; ECF No. 42-9; ECF No. 47-8. The range of Plaintiff's claims were dismissed on summary judgment by a state court order entered on October 4, 2022. ECF No. 42-12. Plaintiff appealed the state court order, and the appeal remains pending. Plaintiff filed the instant, Federal Court action, based on the same nucleus of facts as his state court action, and the following claims were addressed in the R&R: "(1) violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983; and (2) violation of Plaintiff's constitutional rights because Defendants acted with 'racial and invidious discriminatory animus' toward Plaintiff pursuant to 42 U.S.C. § 1985." ECF No. 77 at 8.

The Magistrate Judge recommended that Defendants' Motions for Summary Judgment be granted based on the concepts of res judicata and collateral estoppel. The undersigned agrees with the Magistrate Judge's ultimate holding to grant Defendants' Motions for Summary Judgment, as modified herein.

## **Standard of Review**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber,* 423 U.S. 261, 270-71 (1976). The Court must engage in a de novo review of those portions of the R&R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

However, the Court need not conduct a de novo review when a party makes only "general

and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R&R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199-200 (4th Cir. 1983).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

3

## Discussion

To very succinctly summarize, the R&R recommends dismissal of this action, in its entirety, predicated on the concepts of res judicata and collateral estoppel. Plaintiff objects to the R&R by asserting "II. The Report and Recommendation improperly draws factual conclusions in favor of the moving party and ignores conflicting evidence" and "III. Res Judicata and Collateral Estoppel Do Not Bar This Action." ECF No. 78 at 2, 7. After conducting a de novo review of such portions of the R&R this Court overrules Plaintiff's objections, and adopts the R&R, as modified, in its entirety.

### I. The Report and Recommendation improperly draws factual conclusions in favor of the moving party and ignores conflicting evidence

In Plaintiff's Objection, he urges this Court to reject the R&R, asserting that the Magistrate Judge made a "glaring" error by failing to credit evidence presented by Plaintiff that "contradicted some of its key factual conclusions." *See* ECF No. 78 at 2.

Under this objection, Plaintiff first contends that the "Report Improperly Weighs the Evidence and Construes It in Favor of Defendants on Plaintiff's 42 U.S.C. § 1985 Claims." *See id.* at 3. Plaintiff lodges this objection and points to the following portions of the R&R:

> Plaintiff's sole reason for alleging any claims based on race is that during Judge Lisenby's deposition, which occurred more than two years after the incident giving rise to the claim took place, when she was clarifying which defendant they were speaking about, she called Plaintiff "that black guy."
>
> ...
>
> 1. The signed Bond Checklist for Magistrates and Municipal Judges, provided to the court, supports this recollection that Plaintiff was informed of the charges against him, the nature of those charges, his right to counsel, and specifically, his right to court-appointed counsel if he was financially unable to pay for counsel, as evidenced by what is purported his signature. ECF No. 77, at 3.

>       2. By all accounts, Judge Lisenby attempted to provide Plaintiff two chances to pay his fines and decided to send him to jail only after she found out he lied to her. ECF No. 77, at 19.

See ECF No. 77 at 3, 19; ECF No. 78 at 3-4.

Plaintiff seeks to supplement this record and first reiterates a statement explicitly alluded to in the R&R, that Defendant Lisenby referred to Plaintiff as "that black guy." ECF No. 78 at 3. Plaintiff then continues on to present a myriad of facts, which he claims were not given adequate consideration. ECF No. 78 at 3-4. Plaintiff submits the testimony of Marsh Julian, his former criminal attorney, where Mr. Julian testified that "when he attempted to file post-trial motions with the clerk, 'she said she was refusing to file everything, and she said that I needed to talk to the Judge about it.'" *See id.*; *Julian Dep.* 10:1-10. Mr. Julian further testified that at one point Ms. King took down his number for the Judge to call him, he then "received [a] phone call from the Judge indicating that she was going to deny any motion for a new trial and therefore not [to] file any of my motions." *Id*. At 10:14-17.

In presenting this objection, Plaintiff lodges the following elements as necessary to establish a claim under 42 U.S.C. § 1985:

> (1) a conspiracy of two or more persons; (2) who were motivated by a specific class-based, invidiously discriminatory animus; (3) to deprive the plaintiff of the equal enjoyment of rights secured by the law to all; (4) which results in injury to the plaintiff; and (5) as a consequence of an overt act committed by the defendants in connection with the conspiracy." *Buschi v. Kirven*, 775 F.2d 1240, 1257 (4th Cir. 1985). *See* ECF No. 78 at 3.

Plaintiff further relies on the Fourth Circuit stating that "[d]irect evidence of discriminatory intent is seldom available; indirect or circumstantial evidence can suffice to prove state of mind." ECF No. 78 at 3, citing *Warren v. Halstead Industries, Inc*., 802 F.2d 746, 752 (4th Cir. 1986). Plaintiff next provides that "[w]here a plaintiff seeks to prove discriminatory intent, the probative value of statements revealing the racial attitudes of the decision maker is great. This is so because of the inherent difficulty of proving state of mind...racial statements may be important evidence

5

of discriminatory intent." *Id.* citing *Mullen v. Princess Anne Volunteer Fire Co., Inc.*, 853 F.2d 1130, 1133 (4th Cir. 1988).

"[T]he law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995). "More specifically, the plaintiff must show 'that there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences.'" *Strickland v. United States*, 32 F.4th 311, 361 (4th Cir. 2022) (citing *Simmons v. Poe*, at 1377.) The Fourth Circuit has rarely found this standard to be satisfied as conspiracy claims "alleged in a merely conclusory manner, in the absence of concrete supporting facts" will fall flat. *Id.*

This Court is cognizant of Plaintiff's claim that Judge Lisenby referred to Plaintiff as "that black guy" and Plaintiff's conveyance that such an allegation has "probative value ... revealing the racial attitudes" of the parties allegedly involved in the conspiracy. *Warren*, at 752. However, Plaintiff's attempt to use such a statement to establish a racial animus underlying a conspiracy where Judge Lisenby and Ms. King sought to "trample [Plaintiff's] constitutional rights" is insufficient. While indirect evidence may be "probative" of "racial attitudes, this Court cannot consider such a statement, standing alone, to rise to the level of creating a genuine dispute of material fact, or to be indicative of invidious discrimination by the Defendants. Moreover, "a genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Foresyth v. Wormuth*, No. 21-2000, 2023 WL 5317958, at *1 (4th Cir. Aug. 18, 2023). This Court finds that no reasonable jury could conclude that there was racial animus supporting an alleged conspiracy simply due to Judge Lisenby referring to Plaintiff as "that black guy" in a deposition. The statement was made in the course of civil litigation, solely by one individual, two years later.

Further, Plaintiff relies on this statement by Judge Lisenby alongside the discussions relating to any filing of post-trial motions to convey there was a "meeting of the minds" to invidiously discriminate against Plaintiff and deprive him of his constitutional rights. This argument is merely conclusory and certainly does not rise to the level of evincing "a single plan"

where the "essential nature and general scope" was "known to each person" involved. Plaintiff's February 20, 2024 allegations directed towards establishing a conspiracy,[2] have been fully considered by this Court, yet, simply do not reach the level required to create a genuine dispute of material fact and do not meet the standard that is "rarely" found to be satisfied. *Poe*, at 1377. The scant facts before this Court are insufficient to lead a reasonable jury to conclude there was a single plan" where the "essential nature and general scope" was "known to each person" involved. Accordingly, Plaintiff's § 1985 claim, as to all Defendants, is dismissed.

## II. The Report and Recommendation Incorrectly Finds Defendant King is Entitled to Quasi-Judicial Immunity.

Plaintiff once again lodges an objection, founded in *Tolan*, claiming that the Magistrate Judge failed to follow the correct standard for weighing of facts. *Tolan v. Cotton*, 572 U.S. 650 (2014). Additionally, Plaintiff objects to the Magistrate Judge's finding of quasi-judicial immunity. Plaintiff claims that Fourth Circuit precedent, specifically *McCray*, does not extend such immunity to clerks for performing "ministerial duties" such as "filing papers." ECF No. 78 at 5-7; *McCray v. State of Md.*, 456 F.2d 1 (4th Cir. 1972).

---

[2]Plaintiff's argument centers entirely around the following allegations:
"Here, there is direct evidence that Defendant acted with discriminatory animus to deny Plaintiff's constitutional rights, as when discussing the events, Lisenby referred to Plaintiff as a liar and "that black guy." *See* Ex. 1, Lisenby Dep.45:14-18. Lisenby further admitted to calling the DMV herself and acting as witness against Plaintiff, which she admittedly had never done before and has not done since. Lisenby also admitted to not providing Plaintiff with a jury trial when he demanded one, even after he had not entered a formal guilty plea. *Id*. at 39:6-10. Likewise, she admitted that no records were kept of the court proceedings. *Id*. at 32:1-19. This racial animus of Lisenby permeated the Town of McBee and all employees connected with the municipal court, including Defendant King, the clerk of court. As testified by Julian Marsh, when he attempted to file post-trial motion with the clerk, "she said she was refusing to file everything, and she said that I needed to talk to the Judge about it." Ex. 2, Marsh Dep. 10:1-10. He also testified that Ms. King "took down my number and said the Judge was going to be calling me." *Id.* at 15:7-12. He then later "received the phone call from the Judge indicating that she was going to deny any motion for a new trial therefore not file any of my motions." *Id.* at 10:14-17.
ECF No. 53 at 25.

Plaintiff's objection, in summary, claims that the Magistrate Judge improperly weighed facts and misapplied the law to find that Defendant King was entitled to the protections of quasi-judicial immunity. As to the improper weighing of facts, Plaintiff presents this court with testimony from Julian Marsh as the sole basis for his objection. Mr. Marsh stated that Defendant King stated "she was refusing to file everything" and that Mr. Marsh was "wasting ink." ECF No. 78 at 6-7.

While this Court is mindful of the guiding precedent for weighing facts in a motion for summary judgment and of the "binding Fourth Circuit precedent set forth" in *McCray*, it is inclined to reach the same ultimate finding as the R&R. ECF No. 77 at 6. Plaintiff's argument under *McCray* is that he suffered a constitutional deprivation, under § 1983, due to the clerk refusing to file papers. However, Plaintiff fails to rebut the explicit facts and rules touched upon by Mr. Marsh's own testimony. Mr. Marsh clearly stated that his communication with Defendant King occurred on October 9, 2019 and that Judge Lisenby entered judgment against Plaintiff on August 8, 2019. *Julian Dep.* 17-18. The state court order, often referenced and discussed herein, stated that "Magistrate Court Rule 18 contains the requisite appeal procedures, which Plaintiff's counsel failed to follow as he failed to properly file and appeal with the circuit court...[thus, Defendant's] actions [do not] constitute a violation of any constitutional right." ECF No. 47-11 at 17.

South Carolina Magistrate Court Rule 18 requires all appeals of judgment to be filed within thirty (30) days after delivery of written notice of judgment and Rule 19 requires any motion for a new trial to be filed no later than ten (10) days after entry of judgment. Rule 18(a), 19(b), SCRMC. Here, the pertinent dates are clearly delineated above. Judgment was entered on August 8 and the relevant filings were attempted on October 9. Therefore, it is crystal clear Plaintiff failed to make the requisite filings within the timelines proscribed by South Carolina's rules. As such, Plaintiff failed to avail himself of the state court procedures to make any timely filings. While this Court does not dispute the "binding precedent" of *McCray* as cited by Plaintiff, it does note that the same "binding precedent" also demands a § 1983 claim to be accompanied by a "deprivation of rights." *McCray v. State of Md.*, 456 F.2d 1, 5 (4th Cir. 1972). Plaintiff's

failure to comply with the rules prevented his filings from even being considered. As to Plaintiff's claim that he was deprived of the ability to file a motion for a new criminal trial based on new evidence, this Court finds that such a claim is barred by *res judicata*, the elements of which are identified and discussed later herein. Accordingly, Plaintiff forfeited his rights under South Carolina rules, he was not deprived of them and any § 1983 related claim against Defendant King is dismissed.

### III. The Report and Recommendation improperly finds that *Res Judicata* and Collateral Estoppel Bar this Action

*Res Judicata*

Under South Carolina Law *res judicata* "defines the effect a valid judgment may have on subsequent litigation between the same parties and their privies. Res Judicata ends litigation, promotes judicial economy and avoids the harassment of relitigation of the same issues." *Plum Creek Dev. CO. v. City of Conway,* 334 S.C. 30, 34, 521 S.E.2d 106, 108 (1999). Further, *res judicata* "bars subsequent actions by the same parties on the same issues ... when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Sub-Zero Freezer Co. v. R.J. Clarkson Co.*, 308 S.C. 188, 190-91, 417 S.E.2d 569, 571 (1992). Under the doctrine of *res judicata*, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Hilton Head Center of South Carolina, Inc. v. Public Service Comm'n of South Carolina*, 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987). "To establish res judicata, the defendant must prove the following three elements: (1) identity of the parties; (2) identity of the subject matter; and (3) adjudication of the issue in the former suit." *Riedman Corp. v. Greenville Steel Structures, Inc.*, 308 S.C. 467, 469, 419 S.E.2d 217, 218 (1992); *Sealy v. Dodge*, 289 S.C. 543, 347 S.E.2d 504 (1986); *Plum Creek Dev. Co. v. City of Conway*, 334 S.C. 30, 34, 512 S.E.2d 106, 109 (1999).

1. Identity of the Parties

As to the first element, Plaintiff indirectly objects to the R&R's conclusion that the identity of the parties element was met. Plaintiff states that the report "admits that 'it is true that the parties ... in the federal court case are not identical to the parties and causes of action in the

state court case.'" ECF No. 78 at 10; ECF No. 77 at 12. Further, Plaintiff's responses in opposition to Defendants' motions to dismiss dispute the identity of the parties, claiming "Barbara Lisenby and Terri King are not parties to the state action, nor could they have been under the SCTCA. Under the SCTCA, a plaintiff is **required** to 'name as a party defendant **only** the agency or political subdivision for which the employee was acting .... In the event that the employee is individually named, the agency or political subdivision of which the employee was acting must be substituted as the party.' Therefore, this element is also not met." ECF No. 53 at 12 citing S.C. Code Ann. § 15-78-70(c); ECF No. 54 at 12 citing S.C. Code Ann. § 15-78-70(c).

"For purposes of *res judicata*, however, the concept of privity rests not on the relationship between the parties asserting it, but rather on each party's relationship to the subject matter of the litigation." *Yelsen Land Co. v. State*, 397 S.C. 15, 22, 723 S.E.2d 592, 596 (2012). "The term 'privy' when applied to a judgment or decree means one so identified in interest with another that he represents the same legal rights." *Id*. "One in privity is one whose legal interests were litigated in the former proceeding." *Roberts v. Recovery Bureau, Inc.*, 316 S.C. 492, 496, 450 S.E.2d 616, 619 (Ct. App. 1994).

The state court order, heavily referenced through pleadings and by the Magistrate Judge, identified that Plaintiff's allegations against the Town of McBee stem from the actions of Judge Lisenby. ECF No. 47-11 at 4-5, 12-13. Further, the referenced state court order found that Judge Lisenby "was acting within the course and scope of her employment as a municipal judge, and she had jurisdiction to act." *Id*. Additionally, in the state court action, Plaintiff Qualls "never allege[d] that any action taken by Judge Lisenby was outside the scope of her employment as a municipal court judge." *Id*. Based primarily on the foregoing considerations, the state court declared that Judge Lisenby's actions were protected by judicial immunity. *Id*. Certainly the state court's order shows that there was privity in terms of the relationship between Judge Lisenby and the Town of McBee as "each party's relationship to the subject matter of the litigation" was identical. *Yelsen Land Co.,* at 22. Further, Judge Lisenby's interest and position within the subject matter of the state court litigation was fully analyzed, as the order stated that "Judge Lisenby is absolutely immune from suit." ECF No. 47-11 at 5. Although the South Carolina Tort Claims Act

may not allow the naming of individual defendants, for this Court to find the Judge's interests were not litigated would unquestionably ignore, if not blatantly contradict, the findings of the state court order[3] and the privity in terms of the relationship between Lisenby and the Town of McBee as well as the same for King.

### 2. Identity of the Subject Matter

Plaintiff generally objects to the Magistrate Judge's findings under this element, claiming that the "Report errs in finding that although different proofs are required in the state court negligence claims against Town of McBee and the claims under 42 U.S.C. § 1983 and 1985 against McBee, Lisenby, and King that res judicata still applies." ECF No. 77 at 10. Plaintiff presents that the South Carolina Supreme Court has "long held that if 'the two actions rest upon different states of facts, or **if different proofs** would be required to sustain the two actions a judgment in one is no bar to the maintenance of the other.'" *Id*. Plaintiff continues on to provide that the Report committed clear error, as it admitted "there are significant distinctions" between gross negligence and deliberate indifference, yet, found res judicata applicable. *Id*. Plaintiff's Response to Defendants' motions for summary judgment relied on the same "different proofs" argument.

The Magistrate Judge found Plaintiff's "different proofs" argument unpersuasive, finding that the precedent relied upon by Plaintiff was distinguishable from the case at bar. ECF No. 77 at 14. More particularly, the Magistrate Judge found that the analysis did not analyze "whether claims brought in state court barred a similar lawsuit in federal court." *Id*. This Court agrees that the precedent is distinguishable, but further finds the precedent does not at all lend to Plaintiff's argument. Specifically, Plaintiff's argument, incorporating this precedent, seems rather perplexing

---

[3]*See infra* note 6, Plaintiff's State and Federal complaints lodge nearly identical facts. While Plaintiff was required to represent that the Town of McBee and its "agents" were the ones responsible for the actions, due to the restrictions on who may be sued under the SCTCA, it remains abundantly clearly that Plaintiff's actions are based on the same underlying set of facts where the referenced "agents" of "MCC" are Defendants King and Lisenby. Their relationship to the subject matter is the same, it is not altered by the fact they are now independently named and not referenced merely as "agents."

11

when you consider the entirety of the referenced holding. *Jensen v. Conrad* found that gross negligence and deliberate indifference are distinct as a presumption of deliberate indifference may arise from a finding of gross negligence, yet a more serious mental state may be required to prevent defeat of this presumption. 570 F. Supp 114. From Plaintiff's offered rationale it would then logically flow that an inability to meet the lower "gross negligence" bar would certainly prevent meeting the "different" and higher bar required to establish deliberate indifference.[4] Accordingly, Plaintiff's precedent would be self-defeating here as the state court found that the gross negligence bar was not met.

Likewise, in addressing Plaintiff's argument rooted in precedent, this Court notes that Plaintiff's argument sounding in "different proofs" rests merely on a quotation plucked from case law.[5] Plaintiff has not pointed to any South Carolina cases actually applying or providing a standard for when proofs are "different," nor was this Court able to identify such a case. Thus, while this Court stands beside the "different proofs" logic offered above, it also believes it beneficial to analyze "subject matter identity" under the often applied and explained standards of what constitutes a "different set of facts" or a "different cause of action."

Under the doctrine of res judicata, "[a] litigant is barred from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Judy v. Judy*, 393 S.C. 160, 172, 712 S.E.2d 408, 414 (2011) The South Carolina Supreme Court has recognized that the states' courts "have used at least four tests in determining whether a claim should have been raised in a prior suit." *Id*. At 171-72. This South Carolina Supreme Court decision further indicated that "the determination [of the identity of subject matter] is not to be reduced to a formulaic process." *Id*. Instead, the proper procedure is to "rely on [a]

---

[4]Plaintiff's objections explicitly note that deliberate indifference is a higher bar, stating that "gross negligence is the breach of reasonable standards of conduct posing obvious dangers to others while deliberate indifference involves a **KNOWING** lack of regard or concern for the safety of others." ECF No. 78 at 10.

[5]"[If] two actions rest upon different states of facts, or **if different proofs** would be required to sustain the two actions a judgment in one is no bar to the maintenance of the other." ECF No. 78 at 10(citing *Griggs v. Griggs*, 214 S.C. 177, 185, 51 E.E.2d 622 (1949)).

conceptual framework." *Id*. (citing *Plum Creek* , 334 S.C. 30). Under such a framework, the primary goal is to bar a litigant "from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit." *Id*. A "'cause of action' is not the form of action in which a claim is asserted but, rather the 'cause for action, meaning the underlying facts combined with the law giving the party a right to a remedy of one form or another based thereon.'" *Id*.

Aside from the "different proofs" objection dislodged above, Plaintiff did not object to the R&R's proffered analysis on subject matter identity. The Magistrate Judge concluded that there was subject matter identity as the Plaintiff could have raised both the § 1983 and § 1985 claims in his state court action. Further, the Magistrate Judge provided that "Plaintiff's current claims against ... Defendants are based on the same set of underlying transactions or facts as the state court lawsuit." ECF No. 77 at 15. The Magistrate Judge directs attention to nearly identical facts in Plaintiff's state and federal complaint, as well as the state court order that relied on these precise facts, to support this analysis.[6] This Court wholly agrees with this analysis. The

---

[6]*See* Plaintiff's State Court Complaint, ECF No. 47-8, alleging the following:

¶4. Defendant Town of McBee is responsible for the McBee Municipal Court ("MMC").
¶7. On or about July 8, 2019, in the early morning hours, Dep. Justin Reichard ticketed Plaintiff with several Traffic violations and arrested him. He was released on a Personal Recognizance Bond the following day.
¶8. Plaintiff's tickets had an appearance date set for September 12, 2019, Plaintiff attended.
¶12. Agents of MPD and MMC engaged in impermissible fact finding in a bench "trial" for Plaintiff, such as calling a DMV employee by phone to check Plaintiff's driving record for use in Court.
¶17. Plaintiff was found guilty and sentenced to jail time after an impermissible bench trial in which Defendant participated in and presented evidence.
¶19. As a result of Defendant's grossly negligent and/or reckless conduct, Plaintiff has experienced suffering, mental and emotional anguish, anxiety, and financial harm.
¶23. Defendant, by and through the acts of their agents/employees/servants, undertook a duty to Plaintiff as a member of the public and recipient of services offered and provided by MPC and MMC.
¶24. Defendant through MPD, MMC, and their agents breached its duty in the following particulars ...
    l. In depriving Plaintiff of due process

"underlying facts" are paramount in determining subject matter identity. Here, Plaintiff's complaint has merely reiterated the same nucleus of facts raised and actually litigated in state

---

¶28. Defendant's actions set forth above violate Plaintiff's Constitutional Rights.

¶30. At the time of Plaintiff's arrest, he was treated in an unreasonable manner by MPC and MCC agents.

¶ 36. MPD officers and MCC agents intended to restrain Plaintiff.

¶37. MPD and MCC together imprisoned Plaintiff without adequate process.

See Plaintiff's Federal Court Complaint, ECF No. 1., alleging the following:

¶3. Defendant Barbara Lisenby is a citizen and resident of the State of South Carolina, and at all relevant times, has been employed as the Municipal Judge of the Town of McBee.

¶4. Defendant Terri King is a citizen and resident of the State of South Carolina, and at all relevant times, has been employed as the Clerk of Court of the Town of McBee.

¶7 Defendant Town of McBee operates and is responsible for the McBee Municipal Court, its employees and proceedings.

¶10. Plaintiff met with Defendant Lisenby at the jail on July 8, 2019, who insisted that she would give Plaintiff a personal recognizance bond if Plaintiff would promise to pay the tickets.

¶13. Plaintiff's court appearance date was set for September 12, 2019, which Plaintiff attended.

¶17. Prior to him leaving the building, agents of Defendant Town of McBee began to question if Plaintiff had driven himself to Court and did not allow him to leave.

¶24. Defendant Lisenby acted as investigator and prosecutor and performed her own investigation in Plaintiff's charges and called the Department of Motor Vehicles personally to obtain records about Plaintiff which she allowed herself to introduce to in Court.

¶30. Plaintiff was found guilty without a trial and without an opportunity for counsel and was sentenced to jail time.

¶32. Defendant King promptly called Attorney Marsh to inform him that he was filing too much and that he was wasting their ink.

¶33. Defendant King refused to provide copies of these motions or the letter, and otherwise refused to allow Marsh to meaningfully represent the Plaintiff's interests.

¶34. Defendant Lisenby then called and informed Attorney Marsh that there would be no additional proceedings for Plaintiff, that she would not provide a hearing, and again called Plaintiff a liar.

¶37. Defendant Lisenby and Defendant King were allowed to perpetrate these acts on Plaintiff and violate constitutional rights pursuant to a lack of training and supervision from Defendant Town of McBee, as well as their officially adopted or well-promulgated policy, well-established custom and practice, and pursuant to the actions and decisions of final policymakers.

court. Plaintiff has modified his state court complaint by merely substituting Defendants Lisenby and King for "agents of MCC" and alleged the particular actions committed by each. This Court cannot read the entirety of these complaints and conclude the subject matter differs simply because Defendant decided to name certain individuals and sparingly add minute details. Further, his § 1983 and § 1985 claims wholly rely on this nucleus of facts. This appears to be the precise scenario South Carolina's "conceptual framework" seeks to bar via *res judicata*. While the "form of action" varies, the underlying facts do not and there is no reason Plaintiff could not have pursued such actions in his state court action.

Additionally, the Magistrate Judge relied on two South Carolina District Court cases to support a holding that the South Carolina Tort Claims Act did not prevent Plaintiff from pursuing his § 1983 and § 1985 claims.[7] ECF No. 77 at 12-16.  The Magistrate Judge further relied on the cases as instructive when conducting an "identity of claims" analysis by examining the facts underlying the actions. The R&R provides an adequate summary and discussion of both cases, this Court notes that both cases were affirmed by the Fourth Circuit. Based on the entirety of the foregoing, this Court must conclude that the second element of res judicata has been satisfied.

---

[7]*See generally Wilder v. Krebs*, No. CV 2:17-763-CMC-MGB, 2019 WL 1862648 (D.S.C. Apr. 25, 2019), aff'd, 785 F. App'x 198 (4th Cir. 2019), and aff'd, 785 F. App'x 198 (4th Cir. 2019); *Lyles v. Broach*, No. CV 4:16-3188-TMC-TER, 2018 WL 1064251, at *1 (D.S.C. Feb. 26, 2018), aff'd, 732 F. App'x 247 (4th Cir. 2018). Further, as to concurrent jurisdiction, the Supreme Court has explicitly declared § 1983 claims are subject to concurrent jurisdiction (*Felder v. Casey*, 487 U.S. 131, 139(1988)). While the same, explicit precedent does not exist for § 1985(3) claims, the logic outlined in *Yellow Freight Systems, Inc. v. Donnelly*, 494 U.S. 820, 821-26, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), stating that states have concurrent jurisdiction over Title VII actions remains applicable. The Court in *Yellow Freight Systems, Inc.*, stated that "[t]o give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction." *Id.* at 823. The language of § 1985(3) does not indicate that Congress intended to prevent state courts from having jurisdiction over such claims, thus, jurisdiction should remain concurrent. *See Rouse v. II-VI Inc.*, No. 2:06-CV-566, 2008 WL 2914796, at *9 (W.D. Pa. July 24, 2008); *Robinson v. Allstate*, 706 F. Supp. 2d 320, 325 (W.D.N.Y. 2010), aff'd sub nom. Robinson v. Allstate Ins. Co., 508 F. App'x 7 (2d Cir. 2013). *See also Moore v. City of Columbia*, 284 S.C. 278, 326 S.E.2d 157 (Ct. App. 1985) (South Carolina Court of Appeals exercising concurrent jurisdiction over a § 1985 claim.)

### 3. Adjudication of the Issue in the Former Suit

Plaintiff claims that his appeal of the final, state circuit court order prevents this element from being met. This Court cannot agree with this conclusion. This Court wholly agrees with the R&R's conclusion that the state court order is a "final judgment," thus satisfying this element. Courts within this District, and the Fourth Circuit, have found that a state court summary judgment order, even when pending appeal, constitutes a final judgment for purposes of res judicata. *Guinness PLC v. Ward*, 955 F.2d 875, 898 (4th Cir. 1992) ("existence of a pending appeal does not render a judgment unenforceable nor suspend its preclusive effects absent a party obtaining a stay from either the rendering or enforcing court"); *Machado v. Davis*, No. CA 4:11-1758-KDW, 2012 WL 4051123, at *7 (D.S.C. Sept. 13, 2012).

The R&R notes that the South Carolina Supreme Court has not taken a stance as to the impact an appeal has on a "final judgment" in the context of *res judicata*. ECF No. 77 at 18. Plaintiff generally objects to this statement and refers this Court to the case of *Ross Marine, LLC v. Query, Sautter & Gilserman, LLC*. 380 S.C. 494, 671 S.E.2d 604 (2009). However, the posture of the referenced case is vastly distinct from the present scenario. In *Ross Marine, LLC* the Court of Appeals held an appeal in abeyance pending disposition of a certiorari request involving the same parties, the same underlying facts, and the identical issue of "whether the Firm ha[d] a disqualifying conflict of interest." *Id*. This seems quite sensible as the Court of Appeals would be bound by the decision of their supreme court and was simply avoiding conflicting opinions as well as any judicial inefficiencies. Such logic is inapplicable to the present action. Plaintiff certainly could have pursued actions under § 1983 or § 1985 in state court, yet, he chose not to do so. Accordingly, even if there was South Carolina Supreme Court case law taking a firm stance on a pending appeal's impact on the finality of an order, any ruling on the State Court appeal would have no bearing on application of res judicata to a § 1983 or § 1985 claim as they were not raised in the state court matter. [8]

---

[8] This Court notes its' logic relating to Plaintiff's "different proofs" argument may be impacted if the state appellate court made a finding of "gross negligence." However, as

Consequently, this Court finds that all three elements of *res judicata* have been met as it relates to Plaintiff's claims under §§ 1983 & 1985. Such a holding echoes the underlying theme of South Carolina's laws on *res judicata*, promoting "judicial economy" and avoiding "relitigation." This Court adopts the R&R, as modified by the above analysis, and dismisses Plaintiff's § 1983 as to Defendants Town of McBee and Barbara Lisenby. Further, this Court also adopts the R&R, and dismisses Plaintiff's § 1985 claim as it relates to all Defendants, as discussed herein, Plaintiff not only failed to establish the necessary elements, the claim should have been raised in his state court action.

*Collateral Estoppel*

Plaintiff's objections to the R&R's collateral estoppel analysis are intermingled with his objections to *res judicata*. Plaintiff contends that collateral estoppel is inapplicable as the pending state court appeal prevents the circuit court order from being "final." ECF No. 78 at 8-9. This Court has sufficiently addressed this argument within its' *res judicata* analysis. The only other objection relating to collateral estoppel is found in Plaintiff's "different proofs" argument.

"Collateral estoppel, also known as issue preclusion, prevents a party from relitigating an issue that was decided in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same." *State v. Hewins*, 409 S.C. 93, 106, 760 S.E.2d 814, 821 (2014). In order to establish collateral estoppel the asserting party must establish "that the issue in the present lawsuit was: (1) actually litigated in the prior action; (2) directly determined in the prior action; and (3) necessary to support the prior judgment." *Id*. at 106. South Carolina has recognized that the "mutuality requirement is not necessary for the application of collateral estoppel where the party against whom estoppel is asserted had a full and fair opportunity to previously litigate the issue.'" *Id*. "A defendant can assert collateral estoppel against a plaintiff who had previously had a full and fair opportunity to litigate the relevant issue effectively in a prior action." *Graham v. State Farm Fire & Cas. Ins. Co.*, 287 S.E.2d 495, 496 (S.C. 1982).

---

discussed, this Court would have found "identity of the subject matter" without this "different proofs" logic due to the fact Plaintiff should have and could have raised his § 1983 and § 1985 claims when he alleged nearly identical facts in his state court case.

"Nonmutual collateral estoppel," where "claims in the first and subsequent lawsuits" are not the same, may be asserted unless the party precluded lacked a full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him the opportunity to relitigate the issue." *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 213, 403 S.E.2d 625, 627 (1991); *State v. Hewins*, 409 S.C. 93, 106, 760 S.E.2d 814, 821 (2014).

This Court does not dispute the fact that Plaintiff's § 1983 and § 1985 claims were not truly litigated in the underlying state court action, as Plaintiff failed to raise such claims. Plaintiff's "different proofs" objection is best understood by this Court to be a claim that such causes of action should not be barred by "nonmutual collateral estoppel." However, this Court cannot agree.

To begin, this Court has already sufficiently addressed Plaintiff's "different proofs" argument. Thus, Plaintiff's claim is, at best, an assertion that he was not afforded a full and fair opportunity to bring his § 1983 and § 1985 claims in state court, due to the South Carolina Tort Claims Act. However, this Court addressed this argument within the above *res judicata* analysis. Plaintiff's § 1983 and § 1985 claims center around the exact facts alleged in this action. Plaintiff had a full and fair opportunity to pursue such causes of action within his state court matter and chose not to do so. Moreover, the Fourth Circuit has affirmed two decisions where a South Carolina District Court found that Plaintiff Quall's exact South Carolina Tort Claims Act argument was insufficient to establish that a Plaintiff had not been afforded a full and fair opportunity to bring actions against individuals not able to be named in the state court action. *See generally Wilder v. Krebs*, No. CV 2:17-763-CMC-MGB, 2019 WL 1862648 (D.S.C. Apr. 25, 2019), aff'd, 785 F. App'x 198 (4th Cir. 2019), and aff'd, 785 F. App'x 198 (4th Cir. 2019); *Lyles v. Broach*, No. CV 4:16-3188-TMC-TER, 2018 WL 1064251, at *1 (D.S.C. Feb. 26, 2018), aff'd, 732 F. App'x 247 (4th Cir. 2018). This Court agrees with the logic of such decisions and therefore finds that Plaintiff had a full and fair opportunity to pursue his § 1983 and § 1985 claims in his state court action, therefore, such claims are barred by collateral estoppel.

**Conclusion**

The Court has thoroughly reviewed the entire record, complaint, the R&R, objections to the R&R, and applicable law. For the reasons stated above and by the Magistrate Judge, the Court hereby adopts the R&R as modified by the analysis herein and **GRANTS** Defendants' Motions for Summary Judgment, ECF No.'s 42 & 47.

**IT IS SO ORDERED.**

Florence, South Carolina　　　　　　　　　　　　s/ R. Bryan Harwell
February 21, 2024　　　　　　　　　　　　　　　R. Bryan Harwell
　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge